UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TARZ MITCHELL,<br><br>        Plaintiff,<br>v.<br>GREG COX, et al.,<br><br>        Defendants. | Case No. 2:12-cv-00499-MMD-NJK<br><br>ORDER |

This removed prisoner civil rights action comes before the Court for initial review of the amended complaint (dkt. no. 39).

The initial screening order sets forth the screening standard and the application of the standard to the allegations of the original complaint. *See* dkt. no. 13, at 1-5.

In Count I of the amended complaint, plaintiff alleges, *inter alia*, that he was subjected to cruel and unusual punishment in violation of the Eight Amendment and denied equal protection in violation of the Fourteenth Amendment at Southern Desert Correctional Center ("Southern Desert") by policies that allegedly created a fire hazard. Plaintiff alleges that he and other inmates have been subjected to a fire hazard because: (a) there are no water sprinklers in the units; and (b) inmates are required during their free time to either go outside or remain locked down in their cells with the unit wing gate being locked. Plaintiff alleges that these circumstances expose inmates to a fire hazard during an electrical fire because they would be locked behind the unit wing gate during such a fire.

Amended Count I essentially is a photocopy of Count I from the original complaint. Count I states a claim for relief under the Eighth Amendment but not under the Equal Protection Clause. See dkt. no. 13, at 3 & 4.[1]

In amended Count II, plaintiff alleges that defendant Cheryl Burson would not accept his administrative grievances, which prevented his grievances from being reviewed at higher levels, and that defendant Tanya Hill rejected his grievances. As a result, plaintiff allegedly remained in administrative segregation for 120 days because he had no administrative remedy. Plaintiff alleges that these actions constituted retaliation for his exercise of his First Amendment right to pursue administrative grievances.

Amended Count II also essentially is a photocopy of original Count II. Count II states a claim for relief under the First Amendment. *See* dkt. no. 13, at 3.

In amended Count III, plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was turned away from medical care by Dr. Sanchez after suffering smoke inhalation during a fire with toxic

---

[1] The Court previously instructed plaintiff that: (a) he could not put extensive specific factual allegations in the "nature of the case" portion of the complaint form; (b) he instead must include such allegations within the counts themselves; and (c) all allegations not included within the amended complaint no longer would be before the Court. *See* dkt. no. 13, at 5 & 7; dkt. no. 36, at 4-5 & dkt. no. 38.

In the current pleading, plaintiff omitted the thirteen (13) paragraphs of specific factual allegations in the "nature of the case" in prior pleadings, "whited out" the paragraph numbers in counts from prior pleadings, and renumbered those paragraphs to reflect the omission of the thirteen (13) paragraphs.

The Court never instructed plaintiff that he could not include the thirteen (13) paragraphs of specific factual allegations in an amended complaint. The Court instead plainly instructed plaintiff that he must include all of his factual allegations within the counts themselves and that any omitted allegations no longer would be before the Court.

The Court's instructions have been clear. At this point, after multiple orders as to the procedure required by the complaint form, if plaintiff has omitted material factual allegations, any such failure is due to plaintiff's noncompliance with repeated instructions.

On amended Count I, the Court reads Count I in conjunction with Count III, *infra*, to the extent necessary to read the amended complaint as alleging that plaintiff sustained injury as a result of the Eighth Amendment violation alleged in Count I.

The Court does not address the pendent state law claims in Count I at this time.

smoke in his unit at Southern Desert. Plaintiff alleges that defendant Brian Williams did not respond to his second level grievance seeking to secure medical attention.

Amended Count III sufficiently states a claim under the Eighth Amendment.[2]

In Count IV, plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, retaliation for the exercise of his First Amendment right to seek redress for grievances, and a denial of equal protection in violation of the Fourteenth Amendment. Plaintiff alleges that defendants Cox, Williams, Dressen, Burson, and Hill promulgated a policy or custom that forces inmates to fight to the death or harm one another before receiving a bed move. Plaintiff alleges that after he filed a grievance against the alleged policy, defendants commenced a retaliatory campaign against him, resulting in a loss of a preferential classification status, rejection of grievances, and the filing of a notice of charges against him.

Count IV does not state a claim for relief under the Eighth Amendment. Stripped of plaintiff's pejorative characterization, Count IV simply refers to a policy under which inmates cannot secure a bed move to a different cell on request because they do not like or get along with their cellmate. Nothing about such a policy forces inmates to attack one another to obtain a bed move. Such a policy instead requires that inmates deal with a basic facet of prison life, that an inmate does not have a say in where or with whom they are housed. The Eighth Amendment prohibits correctional officials from denying inmates the minimal civilized measure of life's necessities with deliberate indifference. *E.g, Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). Being housed with only such other inmates as one wants to be housed is not such a minimal life necessity. The consequence of the purported Eighth Amendment violation that plaintiff seeks to pursue is that federal courts then would be put in the role of second-guessing prison housing, security, and resource allocation decisions in a large statewide prison system

---

[2]Plaintiff alleges, *inter alia,* that defendants "knew or should have known" that their conduct violated the Constitution. The Court does not read the count as being based on nonactionable negligence. That is, the surplusage alleging constructive knowledge does not turn a count that states a claim under the Eighth Amendment into one that does not.

3

down to individual bed moves. The Eighth Amendment clearly does not place the federal courts in such a role of micromanaging prison housing decisions. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 482 (1995) (rejecting rule that had "led to the involvement of federal courts in the day-to-day management of prisons"); *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)("operation of . . . correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial); *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993) (referring to "the limited competence of federal judges to micromanage prisons").

The First Amendment retaliation claim in Count IV otherwise is substantially redundant of the claim in Count II[1]. The claim regarding a notice of charges in Count IV is substantially redundant of Count V, which is discussed *infra*.

Count IV further fails to state a claim for relief under the Equal Protection Clause. As the Court observed in the initial screening order, not every dissimilar treatment of allegedly similarly situated individuals violates the Equal Protection Clause.

Count IV therefore will be dismissed for failure to state a claim upon which relief may be granted and/or as redundant of other claims.

In Count V, plaintiff alleges that he was subjected to retaliation for the exercise of his First Amendment right to seek redress for grievances and a denial of equal protection of the laws in violation of the Fourteenth Amendment. He alleges that a notice of charges was brought against him in retaliation for filing the present action, but the charges later were dismissed. He alleges that as a result he was placed in administrative segregation and transferred to a higher security level facility. Plaintiff alleges that he "will no longer be able to earn days which will in effect longer [sic] his

---

[1] To the extent that plaintiff alleges specific retaliatory actions over and above rejection of grievances -- such as, for example, loss of classification status -- the Court reads such allegations as being fairly encompassed within the broad retaliation claim alleged in Count II. However, if a particular consequence is associated with an action resulting in a deprivation of sentence credit, as discussed in Count V, then the claim is to that extent not actionable as discussed as to that count. The Court does not parse through all such potential interrelationships between plaintiff's sometimes overlapping allegations in the amended complaint at the screening stage of the case.

4

sentence as he will not earn the six days per month." His prayer includes a demand for "10 days of work credit each month that [he] has not worked."

Count V does not present a cognizable civil rights claim. When a § 1983 plaintiff presents claims that necessarily challenge the continuing validity of either the fact or duration of his confinement, then his claims are not cognizable in a civil rights action no matter the relief sought or the target of the claims, so long as the claims necessarily imply the invalidity of the confinement or its duration. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Heck v. Humphrey*, 512 U.S. 477 (1994). A § 1983 plaintiff presenting claims that necessarily imply the invalidity of his confinement or the duration thereof first must establish that the confinement has been declared invalid by a state tribunal authorized to make such a determination, expunged by executive order, or called into question by the grant of a federal writ of habeas corpus. *Heck*, 512 U.S. at 486-87. In Count V, plaintiff's allegations that the alleged unconstitutional actions resulted in, *inter alia*, the loss of sentence credit requires the dismissal of the count. Plaintiff both alleges that he lost such sentence credit and seeks restoration of the lost credit. Claims necessarily implying the invalidity of the deprivation of sentence credit, thereby challenging the duration of plaintiff's confinement, are not cognizable under § 1983. *See Edwards v. Balisok*, 520 U.S. 641 (1997).

The amended complaint further does not state a claim for relief against any defendant in their official capacity for monetary damages. First, claims for monetary damages from state officials in their official capacity are barred by state sovereign immunity under the Eleventh Amendment. *See, e.g., Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *Cardenas v. Anzal*, 311 F.3d 929, 934-35 (9th Cir. 2002). Second, state officials sued in their official capacity for monetary damages in any event are not "persons" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989).

As noted in a prior order, plaintiff's claims for injunctive relief regarding Southern Desert Correctional Center are moot following his transfer to High Desert State Prison.

5

Dkt. no. 36, at 4.

Plaintiff's prayer additionally for revision of state correctional department regulation A.R. 740 also fails to state a claim upon which relief may be granted. Federal courts do not revise state administrative regulations.

The Court will dismiss the deficient claims and will direct that the matter proceed forward to mediation or settlement efforts. The Court finds that delaying a final dismissal of the deficient claims for further opportunity to amend would be futile.

It is therefore ordered that the following claims, only, are dismissed without prejudice: (a) Counts IV and V; (b) all claims for monetary damages against defendants in their official capacity; (c) all requests for injunctive relief regarding Southern Desert Correctional Center; and (d) all claims seeking to revise state correctional department regulations. The dismissal of Count V dismisses all claims presented against defendant Vince Haims or Hains.

It is further ordered that:

1. This action is stayed for ninety (90) days to allow plaintiff and defendant(s) an opportunity to settle their dispute before an answer is filed or the discovery process begins. During this ninety-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery. The Court will decide whether this case will be referred to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior the end of the 90-day stay. If the parties proceed with this action, the Court then will issue an order setting a date for the defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and other deadlines.

2. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve plaintiff's issues differently. A

compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

    3.    The Attorney General's Office shall advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of settlement. No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

DATED THIS 28th day of February 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TARZ MITCHELL,<br><br>             Plaintiff,<br>v.<br>GREG COX, et al.,<br><br>             Defendants. | Case No. 2:12-cv-00499-MMD-NJK<br><br>REPORT OF THE OFFICE OF THE ATTORNEY GENERAL RE RESULTS OF THE 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ *[the date of the issuance of the screening order]*, the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

____  A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have reached a settlement, even if paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.)

____  A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____  No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

____  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [enter date].

____  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

____  None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations**. [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

____  The parties engaged in settlement discussions and as of this date, the parties have reached a settlement, even if the paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

____  The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____  The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the

Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____
                          Print                                       Signature

Address:   _____        Phone: _____

              _____        Email: _____

              _____