UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TARZ MITCHELL,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GREG COX,<br><br>　　　　　Defendants. | Case No. 2:12-cv-00499-RFB-NJK<br><br>**ORDER** |

**I.     INTRODUCTION**

This case is before the Court on a Motion for Summary Judgment filed by Defendants James Cox, Brian Williams, Francis Dreesen, Tanya Hill, and Francisco Sanchez. ECF No. 75. Plaintiff Tarz Mitchell is in the custody of the Nevada Department of Corrections (NDOC) and at all times relevant to this case was incarcerated at Southern Desert Correctional Center (SDCC). Mitchell brought this civil rights action against officials employed by NDOC, alleging that Defendants subjected him to unconstitutional conditions of confinement by promoting a policy that increased the risk of harm to Mitchell and other inmates in the event of a fire. Mitchell also alleges that Defendants retaliated against him for filing grievances and were deliberately indifferent to his medical needs after a fire broke out at SDCC. Based upon its review of the record, the Court concludes that there are genuine issues of material fact as to whether Mitchell was subjected to unconstitutional conditions of confinement. However, Mitchell has produced no evidence of retaliation or deliberate indifference to his medical needs. Therefore, the Court denies summary judgment as to Mitchell's conditions of confinement claim (Count I). The Court grants summary judgment in favor of Defendant Hill on Mitchell's

retaliation claim (Count II) and in favor of Defendants Sanchez and Williams on Mitchell's deliberate indifference claim (Count III).

## II. BACKGROUND

### A. Procedural History

Mitchell filed his initial complaint in Nevada state court on January 30, 2012, and Defendants removed the case to this Court on March 26, 2012. ECF No. 1. On December 17, 2012, the Court screened Mitchell's Complaint and granted him 30 days to file an Amended Complaint. ECF No. 13. Mitchell filed an amended complaint on February 12, 2013. The Court then struck this filing for noncompliance with Federal Rule of Civil Procedure 15, but allowed Mitchell another opportunity to amend his complaint. ECF No. 36. Mitchell submitted another Amended Complaint on July 30, 2013, which is the operative complaint in this case. ECF No. 39.

The Amended Complaint contains five counts. The Court screened the Amended Complaint on February 28, 2014 and dismissed Counts IV and V for failure to state claims upon which relief can be granted. ECF No. 45. The Court also dismissed all claims for monetary relief against Defendants in their official capacities, all claims for injunctive relief regarding SDCC, and Mitchell's requests for revision of NDOC Administrative Regulation 740. Id.

As a result, the only remaining counts are as follows:

**Count I** is an Eighth Amendment claim against the following Defendants: Greg Cox, Director of NDOC; Brian Williams, Warden of SDCC; and Francis Dreesen, Assistant Warden of SDCC. In this count, Mitchell alleges that Defendants knew of and disregarded serious risks to his safety because, despite Mitchell's warnings, there are no fire sprinklers in his unit and the main wing gate requires a key to unlock instead of unlocking electronically from the control room, increasing the risk to inmates in the event of a fire.

**Count II** is a First Amendment retaliation claim against Defendants Cheryl Burson, former Assistant Warden at SDCC, and Tanya Hill, Caseworker at SDCC. In this count, Mitchell alleges that Burson would not accept his administrative grievances, which prevented his

grievances from being reviewed at higher levels. He also alleges that Hill rejected his grievances in which he sought to avoid being placed in a cell with an "incompatible" inmate. Mitchell alleges that he was placed in administrative segregation and forced to stay there for 120 days because Burson and Hill either rejected or refused to accept his grievances on the issue.

**Count III** is an Eighth Amendment deliberate indifference claim against Defendants Brian Williams and Dr. Francisco Sanchez. Mitchell alleges that he was denied medical care by Dr. Sanchez after suffering smoke inhalation during a fire in his unit at SDCC. Mitchell also alleges that Williams did not respond to his second level grievance seeking medical attention.

Defendants filed a Motion for Summary Judgment on all three remaining counts on February 6, 2015. ECF No. 75.

### B.  Undisputed Facts

After reviewing the evidence submitted by both parties, the Court finds the following undisputed facts.

At all times relevant to this case, Mitchell was an inmate in the custody of NDOC and serving his sentence at SDCC. On March 23, 2011, a fire broke out in a cell in the Unit 3-B wing at SDCC, which was the same unit (but not the same cell) where Mitchell was housed. As of the date of the fire, Unit 3 was not equipped with fire sprinklers. SDCC was constructed in the early 1980s under a building code that did not require fire sprinklers. SDCC's housing units have not undergone any renovations or additions since their original construction.

Sometime prior to the fire, the main gate to the Unit 3-B wing was capable of being opened automatically from the control room. However, by the date of the fire, this mechanism had been changed so that the gate had to be manually opened by a corrections officer using a crank.[1] There are two additional exits to the Unit 3-B wing: an emergency exit at the end of the wing—which is operated automatically[2]—and a back rotunda door. Before the date of the fire,

---

[1] Although there are references in the parties' exhibits to the wing gate being operated by a "key," Mitchell stated at oral argument—and Defendants agreed—that the actual mechanism for opening the wing gate was a manual crank.

[2] The parties dispute whether inmates were able to use the emergency exit during the fire on

1  Mitchell filed grievances stating that the conditions in his unit, along with the SDCC policy of
2  locking inmates behind the wing gate, constituted a fire hazard. Warden Williams responded to
3  this grievance, stating that the unit is made of concrete and would not burn.

4  All inmates and staff were safely evacuated from the Unit 3-B wing during the March 23,
5  2011 fire. After being evacuated, Mitchell and the other Unit 3-B inmates were taken to the
6  SDCC medical department. Mitchell verbally requested medical attention for smoke inhalation,
7  but was turned away without being seen. Mitchell continues to experience migraines, shortness
8  of breath, and frequent nosebleeds. He did not experience these symptoms before the March 23,
9  2011 fire.

10  On March 26, 2011, Mitchell filed an informal grievance informing SDCC staff that he
11  and other inmates were placed in danger by being locked behind the wing gate during the fire. In
12  his informal grievance, Mitchell also stated that he and other inmates were refused medical care
13  after the fire and that he was experiencing headaches and lightheadedness, and requested that the
14  medical department be required to tend to his and other inmates' medical needs. On May 2,
15  2011, Dreesen denied Mitchell's informal grievance, but did not address the portion of the
16  grievance that pertained to medical treatment.

17  On May 9, 2011, Mitchell filed a first level grievance stating that Dreesen had not
18  addressed his allegations regarding being trapped behind the wing gate during the fire. The only
19  reference to Mitchell's medical issues in this grievance was his statement that he "almost died
20  because of the smoke inhalation." Williams denied Mitchell's grievance on June 7, 2011, stating
21  that SDCC's policies with respect to securing inmates and fire sprinklers were in compliance
22  with the applicable building and administrative codes. Williams also stated that he had been
23  "advised that there were no injuries from this fire and that staff responded quickly and
24  appropriately to evacuate the building."

25  On June 17, 2011, Mitchell filed a second level grievance, again focusing on the policy of
26  being locked behind the wing gate doors and also stating that Williams failed to address
27  Mitchell's allegation that he had been refused medical treatment for smoke inhalation. This
28  

March 23, 2011.

grievance was denied by a nonparty to this case on June 27, 2011. The respondent noted that the medical department had been contacted regarding Mitchell's claims of inattention and that Mitchell had not requested to be seen for smoke inhalation or for any other reason since 2009. The respondent also stated that SDCC medical staff asked all inmates in Unit 3-B whether they needed medical assistance following the fire, and that Mitchell did not request assistance.

After the fire, Mitchell received a Notice of Charges and was sent to disciplinary segregation for refusing to accept a bed move assignment. Mitchell attempted to file grievances on this issue, but Hill and Burson rejected the grievances because of the pending Notice of Charges.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its

claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

**IV.     DISCUSSION**

After reviewing the record, the Court concludes that genuine issues of material fact exist which, if resolved in Mitchell's favor, could enable a jury to find that Defendants subjected him to unconstitutional conditions of confinement. The Court finds no evidence from which a jury could conclude that Defendants retaliated against Mitchell for filing grievances or were deliberately indifferent to his medical needs. Therefore, the Court denies summary judgment on Count I and grants summary judgment in favor of Defendants on Counts II and III.

**A.  Count I – Eighth Amendment Conditions of Confinement Claim**

*1.  Applicable Law*

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment[,] but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006), as amended on denial of reh'g (Nov. 30, 2006). A prisoner bringing an Eighth Amendment conditions of confinement claim "must show (1) that the deprivation he suffered was objectively, sufficiently serious; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." Id. (internal quotation marks omitted). While "the routine discomfort inherent in the prison setting" is not enough to satisfy the first prong, "those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety," and the "circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

### 2. Summary Judgment Is Denied on Mitchell's Eighth Amendment Conditions of Confinement Claim

The Court finds that summary judgment must be denied on Count I. Mitchell has produced sufficient evidence to create genuine issues of material fact which, resolved in his favor, establish each of the elements of his claim for unconstitutional conditions of confinement.

With respect to the first prong, a reasonable jury could find based upon the evidence in the record that Mitchell suffered a deprivation that was objectively and sufficiently serious. This finding is not based upon any one element of Mitchell's prison environment standing alone, but rather the combination of conditions that coalesced to create an excessive risk of harm to Mitchell's safety. First, it is undisputed that there were no fire sprinklers in Mitchell's unit on the date of the fire. Defendants have produced evidence that fire sprinklers were not required under state law when Mitchell's housing unit was built, and will not be required until the structure is renovated or an addition is built.[3] Defendants have also produced evidence that the state fire marshal has advised the NDOC that fire sprinklers are not required in individual cells. This evidence constitutes a potentially legitimate justification for Defendants' failure to install any fire sprinklers. Nevertheless, the fact that fire sprinklers were not *required* does not mean that failing to install them, despite having the capacity to do so, cannot constitute a factor in the analysis of whether an inmate was subjected to an objective and sufficiently serious threat to his safety. Second, the Unit 3-B wing gate—which was undisputedly the main point of entry to and exit from Mitchell's unit—was not capable of being unlocked or opened electronically on the date of the fire. This was due to a decision made by SDCC officials to only allow the door to be opened manually by guards. Third, the means of manually operating the Unit 3-B wing gate was

---

[3] Under the Nevada Administrative Code, buildings owned by the State of Nevada must comply with the building code that was in effect at the time of the building's construction, but fire sprinklers must be installed during the next remodeling of or addition to the building. See N.A.C. 477.915(1).

- 7 -

by using a crank that took considerably longer to operate than an ordinary key would. Based on this evidence, a reasonable jury could find that Mitchell has established a sufficiently serious deprivation in the form of the risk to his safety from the lack of sprinklers and inadequate escape routes in the event of a fire. See Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) ("Prisoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions.").

As for the second prong, there is sufficient evidence for a jury to find that Defendants were deliberately indifferent to Mitchell's safety in allowing these conditions to persist. First, a jury could reasonably find that the addition of fire sprinklers could have significantly reduced the likelihood of a fire starting or spreading in Unit 3-B. Second, it is undisputed that the emergency exit at the end of the 3-B wing was not able to be used during the evacuation on March 23, 2011 and that the main wing gate had to be manually operated using a crank in a process that potentially took a significant amount of time and energy to complete. Finally, it is undisputed that Mitchell filed grievances before the March 23, 2011 in which he alleged that the conditions in Unit 3-B constituted a fire hazard and that in response, he was told that concrete does not burn. A reasonable jury could conclude, based on this evidence taken as a whole, that Defendants' failure to take action to address any of these conditions constituted deliberate indifference to Mitchell's safety.

In response, Defendants argue that other exits were available for inmates to leave Unit 3-B during the fire and that all inmates did in fact exit safely. However, Mitchell has produced evidence, which Defendants have not disputed, that the emergency exit was not usable during the fire. While Defendants have established that another exit existed through the rotunda, they have not produced any evidence that this exit was actually available or used by inmates during the evacuation from the fire. Further, the mere fact that all inmates were evacuated safely does not defeat Mitchell's contention that the conditions in his unit were unconstitutionally hazardous. See Hoptowit, 753 F.2d at 784 (prisoners "need not wait until actual casualties occur in order to obtain relief" from conditions that pose an unreasonable threat to their safety).

Defendants also contend that they decided to make the wing gate key-operated in the interests of security and safety and to prevent unauthorized exits. This claim is called into question by the fact that the emergency exit, which is also accessible by inmates, continued to be operated electronically (although it was not usable during the fire). Defendants' arguments therefore do not defeat Mitchell's conditions of confinement claim. Summary judgment is denied as to Count I.

### C.  Count II – First Amendment Retaliation

Count II is a First Amendment retaliation claim asserted against Tanya Hill and Cheryl Burson.

As a preliminary matter, the Court finds that Burson has not been served with the Amended Complaint in this case. On July 2, 2014, the Nevada Attorney General's office accepted service on behalf of Defendants Cox, Williams, Dreesen, Hill, and Sanchez. ECF No. 53. The Notice of Appearance specifically excluded Burson, whom counsel for Defendants stated is no longer employed by NDOC. Id. Defendants' counsel filed Burson's last known address under seal on July 2, 2014. ECF No. 55. Since that time, Mitchell has not filed any motion requesting issuance of a summons for Burson despite the Court notifying him that he needed to do so with respect to any Defendants for whom the Attorney General's office could not accept service. See Order, ECF No. 51.

Amended complaints must ordinarily be served on every party to an action. Fed. R. Civ. P. 5(a)(1)(B). Pursuant to the version of Rule 4(m) in effect in July 2014, "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Because the Attorney General's office did not accept service of the Amended Complaint on behalf of Burson, Mitchell had 120 days to serve her after he was notified of the Defendants for which the Attorney General did and did not accept service. He has not shown that he has done so. Therefore, the Court directs Mitchell, within 30 days of the date of issuance of this Order, to provide proof that he served Burson within 120 days

1 after being informed that the Attorney General did not accept service on her behalf or to
2 demonstrate good cause for his failure to serve her. If Mitchell does not do so, this action will be
3 dismissed without prejudice against Burson.

4       The Court now turns to the merits of Mitchell's First Amendment retaliation claim
5 against Tanya Hill.

### *1. Applicable Law*

7       To establish a First Amendment retaliation claim within the prison context, a plaintiff
8 must establish five elements: (1) An assertion that a state actor took some adverse action against
9 an inmate (2) because of (3) that prisoner's protected conduct; that such action (4) chilled the
10 inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a
11 legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004). The
12 chilling inquiry is an objective one; a plaintiff need not show that the exercise of his First
13 Amendment rights was *actually* chilled, but rather whether the allegedly retaliatory action would
14 chill or silence "a person of ordinary firmness." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir.
15 2009) (quoting Rhodes, 408 F.3d at 568-69). Prison officials are given "appropriate deference
16 and flexibility . . . in the evaluation of proffered legitimate penological reasons for conduct
17 alleged to be retaliatory." Vance v. Barrett, 345 F.3d 1083, 1093 (9th Cir. 2003) (internal
18 quotation marks omitted).

### *2. Summary Judgment is Granted in Favor of Hill*

20       After the fire, Mr. Mitchell received a Notice of Charges and was sent to disciplinary
21 segregation for refusing to accept a bed move assignment. Mitchell then filed a grievance
22 contesting the Notice of Charges, but Hill rejected the grievance. Mitchell argues that Hill's
23 rejection of his grievances constitutes retaliation prohibited under the First Amendment. After
24 reviewing the evidence submitted by the parties, the Court finds that Mitchell has not produced
25 any evidence that Hill took adverse action against him or that his First Amendment rights were
26 chilled.

27       Mitchell has produced no evidence that the rejection of his grievance constituted "adverse
28 action" as required for a retaliation claim, or that he was subjected to any discipline or other

adverse action as a result of his continuing to file grievances. For example, there is no evidence in the record that Hill's rejection of Mitchell's grievance caused his time in disciplinary segregation to be extended or caused him to receive another Notice of Charges. At oral argument, Mitchell conceded that no disciplinary or other actions were taken against him for filing the grievance other than the grievance being rejected. Nor has Mitchell produced any evidence that Hill in any way discouraged or deterred him from exercising his rights under the First Amendment or that the rejection of grievances would have chilled a person of ordinary firmness. Indeed, Mitchell himself admitted at oral argument that he did not stop filing grievances after Hill's rejection of the grievance in question.

Rather, Hill's basis for rejecting Mitchell's grievance, as stated in her interrogatory responses, was because Mitchell filed his grievance challenging the Notice of Charges while the Notice of Charges was still pending and a hearing was yet to be held. Hill admits—and Defendants' counsel agreed at oral argument—that the NDOC Administrative Regulations do not explicitly prohibit the filing of grievances while Notices of Charges are pending. However, the Court does not find that the rejection of Mitchell's grievance was retaliatory. Before submitting his grievance regarding the Notice of Charges, Mitchell was already scheduled to contest his placement in disciplinary segregation at the scheduled Notice of Charges hearing. Consequently, Mitchell's grievance appears duplicative of the underlying Notice of Charges proceedings, and Mitchell has not demonstrated how Hill's rejection of his grievance was retaliatory. Therefore, summary judgment must be granted in favor of Hill on this claim based on the circumstances in this case.

### D. Count III – Eighth Amendment Deliberate Indifference

Count III is an Eighth Amendment claim against Dr. Sanchez and Warden Williams in which Mitchell alleges that these Defendants were deliberately indifferent to his medical needs after the fire. For the reasons given below, the Court grants summary judgment in Defendants' favor on this count.

### 1. Applicable Law

The legal standard for an Eighth Amendment deliberate indifference claim was set forth above under Count I and the Court incorporates it here. To summarize, first, the plaintiff must show that he suffered a sufficiently serious deprivation, and second, he must show that prison officials were deliberately indifferent to his safety in allowing the deprivation. In addition, liability under 42 U.S.C. § 1983 arises "only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). For the reasons stated below the Court grants Defendants' motion for summary judgment as to both Dr. Sanchez and Williams.

### 2. Summary Judgment is Granted in Favor of Dr. Sanchez and Williams

After reviewing the evidence, the Court finds that summary judgment must be granted in favor of Dr. Sanchez. There is no evidence in the record that Dr. Sanchez personally participated in or directed the violation alleged in Count III. Mitchell has not produced any grievances or kites in which he communicated with Dr. Sanchez at all regarding the fire or smoke inhalation, nor has he shown that Dr. Sanchez knew of the alleged refusal to provide Mitchell with medical care. Therefore, the Court grants summary judgment in favor of Dr. Sanchez on Count III.

The Court also grants summary judgment in favor of Warden Williams on Count III for two reasons. First, the Level 1 grievance Mitchell submitted that was reviewed by Williams does not raise Mitchell's ongoing medical issues. See Opp'n Mot. Summ. J. Ex. 10 at 8. Rather, the Level 1 grievance mentions the fire incident and Mitchell's near-death experience because of smoke inhalation. See id. While Mitchell's lower-level informal grievance directly addressed his medical issues, he has not shown why his failure to raise his medical issues at the Level 1 grievance stage should have put Williams on notice that he was nonetheless preserving or asserting the health issue in his Level 1 grievance. See Opp'n, Ex. 10, p. 1-5 (Informal Grievance explaining how Mitchell was summarily turned away by the medical team after the fire incident and describing his ongoing health issues as a result of the fire). Nor does Mitchell argue that

Williams was under a duty at the Level 1 grievance stage to review—and potentially correct—the responses to all issues asserted in the informal grievance, even if those issues were not re-asserted at the Level 1 stage.

Second, in his response to Mitchell's grievance, Williams stated that he was advised that there were no injuries from the fire and that staff responded quickly and appropriately. Id. at 8. Thus, to the extent that Mitchell *did* raise his medical issues in his Level 1 grievance reviewed by Williams, Williams appears to have inquired into the treatment issued after the fire, addressed it in his response, and denied Mitchell's grievance on that ground. Williams was therefore not deliberately indifferent to Mitchell's medical needs. For these reasons, the Court grants summary judgment in favor of Williams as to Count III.

### V.   CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 75) is GRANTED IN PART and DENIED IN PART, as follows:

- **Count I –** Summary judgment is denied.
- **Count II** – Summary judgment is granted in favor of Defendant Tanya Hill. With respect to Defendant Cheryl Burson, the Court directs Mitchell, within 30 days of the date of this Order, to provide proof that he served Burson within 120 days after the filing of the Attorney General's Notice of Acceptance of Service on July 2, 2014, or to demonstrate good cause for his failure to do so. If Mitchell does not do so, this action will be dismissed without prejudice against Burson.
- **Count III** – Summary judgment is granted in favor of Defendants Dr. Francisco Sanchez and Brian Williams.

**DATED**: July 28, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**